UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JULIAN LOPEZ,

        Petitioner,

        v.                                                              Case No. 05-C-0999

WILLIAM POLLARD,
Warden, Green Bay Correctional,

        Respondent.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Julian Lopez petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. (Pet. 1.) Lopez is confined at Green Bay Correctional Institution and is serving consecutive life sentences following two separate jury convictions of first degree intentional homicide contrary to Wisconsin Statutes section 940.01(a) (1999-2000). (Ans. Ex. B.) The habeas petition challenges Lopez' confinement as a result of one of these convictions, Milwaukee County Circuit Court Case No. 99-CF-1474. (Pet. 1.) According to Lopez the conviction should be over turned due to ineffective assistance of counsel under the Sixth and Fourteenth Amendments and the *Strickland* standard. (Petr. Br. 10.)

Lopez effectively exhausted his available state judicial remedies before petitioning for habeas corpus relief. *See Picard v. Connor*, 404 U.S. 270 (1971). In each appropriate state court, he "fairly present[ed]" his claim and thereby alerted the Supreme Court of Wisconsin to the federal nature of the claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). After sentencing, Lopez filed a timely postconviction motion which was subsequently denied by the trial court. (Ans. Ex.s C & D.) Lopez then appealed the denial

of postconviction relief and presented the court of appeals with the issues underlying the habeas petition at bar. In an unpublished opinion, the Wisconsin Court of Appeals affirmed the conviction and denial of postconviction relief. *State v. Lopez*, 2004 WI App 167, 276 Wis. 2d 309, 686 N.W.2d 455. The court found the evidence presented at trial did not support a felony murder instruction and that Lopez' trial counsel was not ineffective for failing to ask for an instruction not supported by the evidence. *Id.* Lopez then filed a petition for review with the Supreme Court of Wisconsin. That court denied review. Thus, Lopez' petition for habeas corpus is appropriately before this court.

FACTS

Lopez was charged with one count of first degree intentional homicide, while armed with a dangerous weapon, party to a crime for the murder of Khaled Jilani contrary to Wisconsin Statutes §§ 940.01(1)(a), 939.63, and 939.05. After a five-day trial, a jury convicted him of first degree intentional homicide, as party to a crime, but did not find him guilty of committing the crime while using a dangerous weapon. (Ex. J at 5.) Lopez was sentenced to life in prison without parole.

At the trial, several witnesses implicated Lopez in the shooting that left Jilani dead from five gunshots to the right side of his head and neck. (Ans. Ex. 7 at 7-13, 59, 89-90.) In the early hours of March 21, 1999, the night of the murder, Officer Kim Foti saw Lopez jump out of Jilani's car and run. (Ex. 5 at 25.) She caught Lopez fleeing from the scene of the crime with a gun in his hand, and gunshot residue was found on his gloves, sweatshirt, and pants. (*Id.* at 26-30; Ex. 7 at 161-62.) The police also determined that Jilani was shot with the gun that Lopez was holding. (Ex. 5 at 14-16; Ex. 8 at 10-11.)

2

At trial, and central to this petition, Luis Acevedo testified on behalf of the State. Acevedo stated that Lopez told him about Jilani's murder. (Ex. 7 at 59.) According to Acevedo, Julian Lopez said that he and Arthur Lopez (Arthur) approached Jilani's car to discuss money that Jilani owed on a drug debt. (*Id.*) Lopez told Acevedo that he and Arthur got into Jilani's car and began to talk to Jilani. (*Id.*) Acevedo testified that, as Arthur was pistol-whipping Jilani, Lopez blurted out Arthur's nickname. Lopez told Acevedo that he, Lopez, then shot Jilani in the head. (*Id.*) According to Acevedo, both men were wearing masks and dressed in black. (*Id.* at 60.)

Ernesto Lopez (Ernesto), the defendant's nephew, testified that Lopez told him that he and Arthur and Loyd Guzior "met up with" Jilani. (*Id.* at 89-90.) According to Ernesto, as soon as Lopez and Arthur got into Jilani's car, Arthur started to pistol whip Jilani and Jilani lost control of the car. (*Id.* at 89-91.) Lopez then reached for the steering wheel of the car and tried to steer the car. (*Id.*) While this was happening, Lopez accidentally said Arthur's nickname. (*Id.* at 91-92.) Ernesto testified that Lopez told him that he, Lopez, shot Jilani in the head. (*Id.* at 88-89, 92-93.) According to Ernesto, Lopez was wearing a mask when he confronted Jilani. (*Id.* at 92.)

Lopez testified in his defense and claimed that approximately five minutes after Arthur got into Jilani's car he walked to the car and saw the two fighting. (Ex. 9 at 6.) Lopez said that he got into the car to see what was going on. (*Id.*) Next, Lopez tried to stop Arthur from shooting, but Arthur fired too fast. Lopez claimed that when the car stopped, Arthur dropped the gun and ran away. According to Lopez, he then picked up the gun and also ran

3

away. Lopez denied that he shot Jilani and further claimed that he never told Acevedo or Ernesto that he shot Jilani. (*Id.* at 19-20.)

DISCUSSION

The scope of habeas relief does not give this court the authority to reexamine state court determinations of state law questions unless the conviction of the petitioner violated the Constitution, law, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). These are two independent grounds on which a federal court can grant habeas corpus relief. *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001).

The "contrary to" clause of subsection 2254(d)(1) applies solely to questions of law. *See Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996), *rev'd on other grounds*, 519 U.S. 1017 (1997). It requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails." *Id.*

In contrast, where mixed questions of law and facts arise, federal courts will not grant collateral relief from state court judgments unless the state court's judgment is

4

"unreasonable." *Id.* at 870. Mixed constitutional questions of law and fact are those decisions "which require the application of a legal standard to the historical-fact determinations." *Thompson v. Keohane*, 516 U.S. 99, 109 (1995). Unreasonableness equates to a demonstration of incorrectness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). In determining whether a state court's application of Supreme Court case law was reasonable, a federal court must assess whether the determination was minimally consistent with the facts and circumstances of the case. *See Hennon v. Cooper*, 109 F.3d 330 (7th Cir. 1997). To succeed on either ground for relief, the petitioner carries a heavy burden.

I. Ineffective Assistance of Counsel

*Strickland v. Washington* is clearly established federal law laying out the standard for ineffective assistance of counsel, as determined by the Supreme Court of the United States. 466 U.S. 668 (1984); *Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002); 28 U.S.C. § 2254(d)(1). The Wisconsin Court of Appeals recited the appropriate *Strickland* test when it considered Lopez' request for postconviction relief. *See State v. Lopez*, 2004 WI App 167, ¶¶ 12-14, 276 Wis. 2d 309, ¶¶ 12-14, 686 N.W.2d 455 (unpublished). "The familiar two-pronged test for ineffective-assistance-of-counsel claims requires a defendant to prove (1) deficient performance; and (2) prejudice." *Id.* (citing *Strickland*, 133 U.S. at 687). On habeas review, this court must determine whether the court of appeals' denial of the ineffective assistance claim was an "unreasonable application" of controlling authority to the facts of Lopez's case. 28 U.S.C. § 2254(d)(1).

Lopez argues that his attorney's failure to request an instruction for the lesser included offense of felony murder falls below reasonable professional judgment. More at issue, Lopez contends that "the court of appeals applied an incorrect legal standard for

5

determining whether to instruct the jury on the lesser included offense of felony murder." (Petr. Br. 13.) Therefore, Lopez's theory is that if the court of appeals had applied the correct standard for lesser included offenses, the court would have found the trial attorney's performance was deficient.

First, the court must determine what is the appropriate standard for when a lesser included offense instruction is warranted. In a petition for habeas relief, federal courts do not reevaluate determinations of state law. *Estelle*, 502 U.S. at 67-68. Rather, a federal district court is concerned with federal law, in this case the Seventh Circuit's standard regarding lesser included offenses. *Id.*

In the Seventh Circuit, in a noncapital case, the failure to instruct a jury on a lesser included offense, even if incorrect under state law, does not warrant setting aside the conviction unless the failure to do so amounts to a "fundamental miscarriage of justice." *Nichols v. Gagnon,* 710 F.2d 1267, 1269 (7th Cir. 1983); *Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir. 1998). To show a "fundamental miscarriage of justice," Lopez must demonstrate that had the omitted instructions been given, a reasonable jury probably would have found him guilty of felony murder rather than first degree intentional homicide. *See Taylor v. Gilmore*, 954 F.2d 441, 451 (7th Cir. 1992); *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000); *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996); *Milone v. Camp*, 22 F.3d 693, 699 (7th Cir. 1994); *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). At a minimum, he must show that there was "unequivocally strong" evidence in the record by which a jury could have found each element of the proposed instructions. *See United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 403 (7th Cir. 1979).

Now, the court will analyze whether there was "unequivocally strong" evidence in the record such that a reasonable jury could have acquitted Lopez of first degree intentional homicide and convicted him of felony murder.

## A. Failure to Request Felony Murder

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged to fall below what is considered reasonable professional judgment. *Id.* at 690. The defendant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689.

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Id.*

### i. Conviction on Felony Murder

An attorney is not deficient for failing to request a lesser included offense instruction when the facts in evidence do not support the instruction. *See e.g., State v. Foster,* 191 Wis.2d 14, 528 N.W.2d 22 (Ct. App. 1995); *State v. Borrell,* 167 Wis.2d 749, 779, 482 N.W.2d 883, 894 (1992). Nevertheless, Lopez argues that there was ample evidence to support the conclusion that he did not intend to kill Jilani and an instruction on felony

7

murder. (Petr. Br. 14-16.) However, lack of intent is not enough for a conviction of felony murder. *See* Wis. Stat. § 940.03.

As demonstrated by the title of the crime, felony murder requires the elements of a felony in addition to a death. *Id.* Lopez fails to assert which felony, of the five enumerated in the statute, could be supported by the evidence in the record. *Id.* Without the elements of the underlying felony, a judge would not give a felony murder instruction and a reasonable jury could not convict him of felony murder. *See* Wis. Stat. § 940.03.

Felony murder requires proof that (1) the defendant committed, or attempted to commit, a felony specified in the statute; and (2) that the death of the victim was caused by the commission of, or the attempt to commit, that felony. *Id.*; *State v. Krawczyk*, 2003 WI App 6, ¶ 15, 259 Wis. 2d 843, ¶ 15, 657 N.W.2d 77, ¶ 15. Jurors must first determine, beyond a reasonable doubt, that Lopez or his accomplice committed, or attempted to commit, a felony enumerated in the felony murder statute at the time of the murder. *Id.; State v. Chambers*, 183 Wis. 2d 316, 324, 515 N.W.2d 531, 534-35 (Ct. App. 1994). In 1999, when Jilani was murdered, the underlying felonies in the statute were: first and second degree sexual assault, arson, armed burglary, and armed robbery. Wis. Stat. § 940.03.

Although not clearly stated, reading the brief in the light most favorable to Lopez, armed robbery is the only potential basis for an instruction of felony murder. At trial, Acevedo's testimony was the only evidence that possibly supports a theory of felony murder. On the other hand, Lopez' own testimony does not indicate that he was committing an armed robbery when Jilani was shot. Therefore, Acevedo's testimony would have to demonstrate that an armed robbery was being committed so as to warrant a felony murder instruction. *See Krawczyk*, 2003 WI App 6, ¶ 15, 259 Wis. 2d 843, ¶ 15, 657 N.W.2d 77, ¶ 15.

8

In Wisconsin, the elements of armed robbery are (1) the intent to steal, (2) the taking or attempt to take property from another, (3) by use of force or threat of force, and (4) with use of a dangerous weapon. Wis. Stat. § 943.32 (1) & (2). However, the state court record which is available to this court does not contain enough evidence to support a conviction of armed robbery. Acevedo testified as follows:

> Q    Now, did he [Lopez] provide any explanation of tell you about why Julian Lopez was approaching Khaled Jilani?
> A:    It was a matter over money.
> Q:    And what did that matter over money involve?
> A:    A drug debt.
> Q:    So Julian Lopez and Arthur Lopez, Jr. approached Kaled Jilani because of that drug debt?
> A:    Yes, sir.
> Q:    And what does Julian Lopez say happens as they do that?
> A:    Julian Lopez said that him and Arthur Lopez, Jr. entered the car, and they were talking to the victim, Khaled Jilani, and Arthur Lopez Jr. was pistol whipping him, and Julian Lopez blurted out Arthur Lopez's name – nickname Junior, and that was the cause of the victim's death.
> Q:    Did Julian say who caused Khaled Jilani's death?
> A:    Yes, sir, he said that Junior Lopez said that he shot him after he blurted out Junior's name.

(Ex. 7 at 59.)

This testimony is not "unequivocally clear evidence" that Lopez or Arthur committed or attempted to commit armed robbery. Acevedo's testimony simply states Lopez approached the victim over a drug debt. (*Id.*) The testimony does not state that Lopez or his accomplice attempted to, or did in fact, take property from the victim. Indeed, Lopez and Arthur ran away from the car without any of the victim's property.

From Acevedo's testimony, a jury could draw several inferences. First, Lopez and Arthur intended to talk to Jilani, to scare him into paying his drug debt, to hurt him, or to physically take the money owed. However, these possible inferences are not "unequivocally

9

strong" evidence upon which a jury could have found each element of the underlying felony necessary for felony murder. *See Peery*, 615 F.2d at 403.

Moreover, the jury acquitted Lopez of the use of a dangerous weapon charge, indicating that it is unlikely that they would have found armed robbery beyond a reasonable doubt.[1] Given the jury's acquittal on the use of a dangerous weapon charge, it stands to reason they may also have acquitted Lopez of armed robbery. Therefore, Lopez has failed to establish that it was likely that the jury would have convicted him of felony murder if the felony murder instruction had been given.

ii. Acquittal on First Degree Intentional Homicide

The elements of first degree intentional homicide are that the defendant (1) caused the death of another (2) with the intent to kill. Wis. Stat. § 940.01(1)(a). There is no dispute that the shooting caused Jilani's death. The issue is whether a jury could have doubted Lopez' intent to kill.

Lopez submits that there was a reasonable ground for acquittal on the greater charge of first degree intentional homicide. He asserts that his exculpatory testimony provides a basis for a reasonable jury to find he did not intend to kill Jilani. (Petr. Br. 14.) Moreover, he argues a jury could have acquitted him of first degree intentional homicide because Arthur brought the gun to the scene, Arthur pistol-whipped Jilani, he merely picked the gun up after Arthur threw it down, he did not know that Arthur had a gun until he heard the shots, and the jury acquitted on the dangerous weapon charge. (*Id.* at 15-16.) However, all of this is irrelevant because the jury did convict Lopez as a party to a crime contrary to

---

[1]The presence of a dangerous weapon is a penalty enhancer to both robbery and murder. *See* Wis. Stat. § 939.63.

Wisconsin Statute § 939.05. Therefore, the intent of Lopez' accomplice, Arthur, is imputed to Lopez. *Id.* Further, in Wisconsin, there is no requirement that Lopez share the specific intent to kill required for conviction of first degree intentional homicide. *State v. Zelenka*, 130 Wis. 2d 34, 47, 387 N.W.2d 55, 60 (1986). If Arthur intended to kill, then Lopez is vicariously liable for that intent, even if Lopez did not pull the trigger. *Id.* In other words, the jury need not believe that Lopez was the actual shooter to convict him of first degree intentional homicide, party to a crime. *Id.* It is sufficient if the jury believed Arthur pulled the trigger with the intent to kill. *See id.*

The testimony at trial showed that Lopez was present when Jilani was pistol whipped. (Ex. 7 at 59, 89-90.) There was also testimony that Lopez told two people that he was the one who shot Jilani in the head. (*Id.* at 59, 92.) The gun Lopez was carrying when he was arrested was the gun used to kill Jilani. (Ex. 7 at 14-16; Ex. 8 at 10-11.) Furthermore, the police found gun powder residue on Lopez' clothing. (Ex. 7 at 161-62.) This evidence strongly suggests that either Lopez or Arthur shot Jilani. Hence, the jury had sufficient evidence to find beyond a reasonable doubt that Lopez either committed the act or aided and abetted his accomplice in shooting Jilani. *See State v. Whiting*, 136 Wis. 2d 400, 410, 402 N.W.2d 723, 128-29 (Ct. App. 1987) (finding that defendant's presence when the victim was beaten and murdered is enough to infer that the defendant either committed the murder or aided and abetted his accomplice). Given the evidence, it is not likely that a reasonable jury would have acquitted on the charge of first degree intentional homicide party to a crime.

Moreover, there was enough evidence for a reasonable jury to find intent to kill. The term "with intent to" means that the actor either has the purpose to kill or cause death, or is aware that his conduct is practically certain to cause death. *See* Wis. Stat. § 939.23(4).

Because direct evidence of intent is rare, a trier of fact "may infer intent from the circumstances surrounding one's acts." *See State v. Weeks*, 165 Wis. 2d 200, 210, 477 N.W.2d 642, 646 (Ct. App. 1991). There is a presumption that one intends the natural and probable consequences of his acts. *State v. Cydzik*, 60 Wis. 2d 683, 697, 211 N.W.2d 421, 429-30 (1973). In cases of first degree intentional homicide, evidence that the defendant shot his victim in a vital part of the body raises a presumption of intent. *Smith v. State*, 69 Wis. 2d 297, 303-304, 230 N.W.2d 858, 862 (1975).

At trial a forensic pathologist testified that the victim was shot five times. (Ex. 7 at 8.) He also testified that all five shots were fired at close range to the victim's head and neck, vital parts of the body. (*Id.* at 7-12); *State v. Morgan*, 195 Wis. 2d 388, 440-41, 536 N.W.2d 425, 445 (Ct. App. 1995) (noting that one shot was enough to find intent beyond a reasonable doubt). Pointing a gun at a vital part of the victim's body, as the state's expert testified, supports the conclusion that the shooter intended to kill. *Smith*, 69 Wis. 2d at 303-304, 230 N.W.2d at 862. Further, this proof indicates "that the shooter was aware that shooting at such a close range was 'practically certain' to cause [the victim's] death." *Weeks*, 165 Wis. 2d at 210, 477 N.W.2d at 646; *see also State v. Weber*, 196 Wis. 2d 308, 324-25, 538 N.W.2d 810, 816 (Ct. App. 1995).

These determinations are more than sufficient to support Lopez' conviction. If the killing of Jilani was intentional, the homicide cannot be characterized as a felony murder. *See Shears,* 68 Wis. 2d 217, 242-43, 229 N.W.2d 103, 116-17(1975).

The court of appeals did not err when it concluded that a reasonable jury could not have convicted on the lesser included offense of felony murder. *Lopez*, 2004 WI App 167,

¶¶ 18-19, 276 Wis. 2d 309, ¶¶ 18-19, 686 N.W.2d 455.  Therefore, Lopez' trial counsel was not deficient for failing to request a felony murder instruction which was not supported by the evidence.

### iii.  Prejudice

There is no need to evaluate the second prong of the *Strickland* test because Lopez has not established the first prong, deficient performance.  Without deficient performance there cannot be any prejudice to the defendant.  Even if Lopez' attorney had requested an instruction on felony murder, the trial judge would not have given it inasmuch as the evidence did not support the request.  The judge so stated in denying Lopez' postconviction motion.  (Ex. F at 4.)

### B.  Failure to Consult With Client About Lesser Included Offense

The initial duty of defense counsel to confer with the client regarding a lesser-included offense request is recognized by the ABA Standards for Criminal Justice, a source that establishes guidelines for reasonable professional assistance.  *State v. Ambuehl*, 145 Wis. 2d 343, 355, 425 N.W.2d 649, 654 (Ct. App. 1988) (citing *ABA Standards for Criminal Justice*, Standard 4-5.2, commentary (2d ed. 1980)).  Standard 4-5.2(a)(I) provides that what plea to enter is a decision to be made by the accused after full consultation with counsel.  *Id.* According to the commentary, the decision whether to request a lesser-included offense instruction is so similar to the decision to plead, that the defendant should be the one to decide whether to request the instruction.  *Id.*  However, the commentary states it is "important in a jury trial for the defense lawyer to consult fully with the accused about any

lesser included offenses the trial court *may be* willing to submit to the jury." *Id.* at 355 n.4. (*emphasis added*).[2]

Ideally, counsel would have discussed lesser-included offenses with Lopez and explained why they were inappropriate. However, the right to request a lesser-included-offense instruction "is neither a constitutional nor a fundamental right." *State v. Nicholson*, 148 Wis. 2d 353, 366, 435 N.W.2d 298, 304 (Ct. App. 1988). And, when the evidence does not support the instruction, as discussed above, it is not deficient performance not to ask for the instruction. (Ex. F at 4.) Even assuming trial counsel's performance was questionable, Lopez must establish deficient performance and prejudice. Here, he has not established prejudice.

As to prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Lopez maintains that had an instruction on felony murder gone to the jury there was a reasonable probability that the jury would have acquitted him of first degree intentional homicide and instead found him guilty of felony murder.

As discussed earlier in this opinion, even if Lopez' attorney had discussed the possibility of a felony murder instruction with him, the judge has stated that he would not have given the instruction because it was not supported by the evidence. Thus, Lopez is unable

---

[2] Lopez's argues that the colloquy was insufficient to establish that Lopez and his attorney spoke about lesser included offenses. (Petr. Br. 18-19.) Even assuming this is true, it is not deficient performance to fail to discuss lesser included offenses that the court was not willing to submit to the jury.

14

to establish that he was prejudiced by his attorney's alleged failure to discuss the possibility of lesser included offenses instruction.

Finally, Lopez also argues that he was entitled to a post conviction evidentiary hearing as to whether he and trial counsel discussed a lesser included offense instruction. (Petr. Br. 20.) A trial court must hold a hearing if the defendant alleges facts that, if true, would entitle the defendant to relief. *State v. Bentley*, 201 Wis. 2d 303, 309-12, 548 N.W.2d 50, 53 (1996). However, if the record demonstrates that the defendant is not entitled to relief, the trial court may deny the motion with a hearing. *Id.* The record confirms that the evidence presented at trial did not support a felony murder instruction. Therefore, the trial court could appropriately determine the issues without a hearing. Regardless, the transcript of the jury instruction conference as discussed by the Wisconsin Court of Appeals (Ex. J at 5; Petr. Brief 5) disclosed that Lopez and trial counsel advised the trial court that they had discussed and rejected a lesser included offense instruction. Hence, the Wisconsin Court of Appeal's conclusion that the record belies Lopez' contention that trial counsel was ineffective due to his failure to request a lesser included offense instruction, is unassailable. (Ex. J at 8.)

Therefore,

IT IS ORDERED that the petitioner's motion for habeas corpus is denied.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2008.

> BY THE COURT
>
> s/ C. N. CLEVERT, JR.
> C. N. CLEVERT, JR.
> U. S. DISTRICT JUDGE